## JAMES ROBERTSON HOTEL CORP.
### v.
### UNITED STATES.

Civ. No. 1621.

United States District Court
M. D. Tennessee, Nashville Division.

March 26, 1954.

Barksdale & Hudgins, Nashville, Tenn., for plaintiff.

Fred Elledge, U. S. Atty., Nashville, Tenn., and Harlan Pomeroy, Attorney, Tax Division, Department of Justice, Washington, D. C., for defendant.

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, and argu-

ment of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact

1. During the years 1928, 1929, and 1930, and prior years, Messrs. J. W. Pritchett, George C. Thomas, and John A. Pritchett were partners in the real estate firm known as Pritchett-Thomas Company. They had an option to buy certain property in Nashville, Davidson County, Tennessee, and they desired to purchase it and erect a building thereon.

2. In order to finance this venture, they formed a common-law trust and issued preferred and common syndicate certificates, as provided for under the terms of a syndicate agreement entered into by the trustees and the purchasers of the certificates.

3. For purposes of the federal income tax, the government insisted that the trust, or syndicate, be taxed as a corporation on the accrual basis, and all income tax returns were filed on that basis during the existence of the trust, or syndicate.

4. The sole purpose in issuing the preferred certificates was to finance the purchase of real property and the erection of a building on that property.

5. The nature and purpose of the preferred certificates appear from the facts and circumstances surrounding the organization of the trust and from certain provisions of the syndicate agreement under which said business trust was formed. For instance:

(a) Section 6 of the agreement provides that said preferred certificates shall constitute a first charge against the total net income arising from the conduct and operation of said land, and all improvements thereon, and shall be preferred in the event of any sale or conversion of said property in the manner provided in the agreement.

(b) Section 7 of said agreement is significant and provides for subordinating said certificates in event a mortgage loan should become necessary because of failure to sell enough preferred certificates to raise the required amount to complete and furnish the building after acquisition of the real estate.

(c) Section 17 of said agreement provides as to amount that, if preferred certificates to the aggregate face value of $100,000 were not sold by July 1, 1929, then the trustees must return in full to the preferred certificate holders the amounts paid by them.

(d) Section 10 provides that the entire income from rents, after the payment of all fixed charges, must be applied to the payment of all interest accruing on the certificates, the balance of such earnings to be placed in a sinking fund for the purpose of retiring said certificates.

(e) Such provisions are not characteristic of preferred stock which, though ordinarily preferred over common stock, is preferred only in the event of a liquidation of the corporation. No sinking fund is ordinarily established for retirement of preferred stock. Furthermore, preferred stock is not ordinarily required to be retired by a corporation within a certain period of time; but the preferred certificates involved in this case had to be retired on December 1, 1945, if not before.

(f) Said agreement further provides that the preferred certificate holders were to have no interest in the land or building. Stockholders of the corporation would have an interest in the property of the corporation, after payment of debts and claims. They are considered as holding an equity.

(g) Section 13 of the agreement provides that at any time after one year from the date of the agreement, the trustees could convert the trust into a corporation without the consent of the certificate holders; and the only stock such corporation was authorized to issue was common stock. Bonds were to be exchanged for the preferred certificates on an equal face value basis.

6. $339,500 was received from the sale of preferred certificates for the purpose of procuring the property and constructing and equipping the building; and this sum, less expenses of selling the preferred certificates, was so employed.

7. On November 1, 1945, when the trust was converted into a corporation, $75,000 of the preferred certificates had been retired and preferred certificates aggregating $264,300 were exchanged for bonds of equal face value, due in 20 years from date but subject to call after three years. This was authorized by Section 13 of the syndicate agreement.

8. Pursuant to such conversion, plaintiff corporation was organized on November 1, 1945, and became vested with the properties of the syndicate, or trust; and, at the time said corporation bonds, due in 20 years, were exchanged for said preferred syndicate certificates, on such equal basis, common stock of the corporation was exchanged for common syndicate certificates on an equal face value basis.

9. When said preferred syndicate certificates were issued, $73,040.94 was paid to Pritchett-Thomas Company for their services in selling the preferred certificates, in accord with section 12 of the syndicate agreement. Of this amount, $59,630.21 was allocated to the building and amortized at the rate of 2½%, per year, amounting to $1,478.26, per year, over a period of 40 years, which was actually in excess of the combined terms, or lives, of said preferred certificates and corporate bonds exchanged therefor. The preferred certificates had a maximum life of 15 years and had to be exchanged for said corporate bonds by December 1, 1945, or redeemed; and the maturity of such bonds was fixed at not more than 20 years after the exchange. Hence, the combined term amounted to 35 years, or less, if the securities were redeemed at an earlier date.

10. Said preferred certificates were in the nature of interim certificates in connection with the final issuance of definitive bonds because they were subject to be exchanged for corporate bonds at any time after one year from the formation of the trust, or syndicate, and up to December 1, 1945, not at the election of the holders but as required by the trustees under the provisions of sections 13 and 16 of the syndicate agreement.

11. When said corporate bonds, for which the preferred certificates were exchanged, were paid off in full and redeemed by plaintiff on November 1, 1948, the balance of the unamortized expense accrued in issuing and selling them initially, in the form of preferred syndicate certificates, amounted to $30,633.71.

12. In arriving at taxable income for the years 1945, 1946, 1947, and 1948, plaintiff deducted in each year the sum of $1,478.26 as the aliquot part of the expense of selling said preferred certificates, or bonds, as aforesaid and in accord with the practice followed in reporting for income taxes in prior years; but deficiencies in taxes were assessed against plaintiff by defendant for each of said years and claims for refund were filed and denied for each of said years.

13. The amounts paid by plaintiff on account of such deficiency assessments and for which claims for refund were filed and denied and for which this suit is brought are as follows:

(a) For the year 1945, excess profits and income taxes amounting to $1,834.48, plus interest of $324.05 to March 16, 1949, the date of payment and aggregating $2,158.53.

(b) For the year 1946, income tax amounting to $1,003.42, plus interest of $168.04 to January 9, 1950, the date of payment, aggregating $1,171.46.

(c) For the year 1947, income tax amounting to $1,131.72, plus interest of $155.65 to July 15, 1950, the date of payment, aggregating $1,287.37.

(d) For the year 1948, income tax amounting to $1,131.72, plus interest of $87.73 to July 15, 1950, the date of payment, aggregating $1,219.45.

14. When said corporate bonds were redeemed and paid off in full in cash by plaintiff on December 1, 1948, the re-

maining unamortized balance of the expense of sale of said preferred certificates which were converted into said corporate bonds as aforesaid, amounted to $30,633.71, after plaintiff had deducted from said unamortized balance in computing tax for the year 1948, the sum of $1,478.26, on account of which deduction the deficiency for the year 1948 was assessed and paid, as set out in the preceding finding of fact with respect to the year 1948; and, plaintiff did not deduct said balance of $30,633.71 from its taxable income in the year 1948 which resulted in an overpayment of taxes in that year amounting to $8,389.-92, in addition to the deficiency assessed in the year 1948, as set out in the preceding finding of fact.

15. In addition to the overpayment for the year 1948, amounting to $8,389.-92, plaintiff is entitled to a "carry back" to the year 1946, resulting from the operating loss on account of the deduction of said unamortized balance of expense on sale of securities when the corporate bonds were paid off on November 1, 1948, thus reducing plaintiff's 1946 income tax by an additional amount of $263.24.

### Conclusions of Law

1. The Court has jurisdiction of this action under Title 28, U.S.Code, 1940 Ed., Sec. 41(20).[1]

■ 2. Both commissions and discounts deducted from the proceeds of sale of bonds, or like fixed term obligations, have the effect of reducing the funds realized therefrom by the taxpayer and may be amortized over the term of such bonds, or obligations, and deducted in arriving at taxable income where the taxpayer is required to report Federal income taxes, or excess profits taxes, as a corporation on the accrual basis.

■ 3. The cost of issuing and selling temporary certificates evidencing fixed obligations may be amortized over the combined terms of such certificates and the definitive bonds, for which the holder is required to exchange such certificates; and an aliquot part thereof may be deducted in each taxable year.

■ 4. In exchange of new bonds, or obligations, for prior or temporary obligations at or before maturity of the prior obligations, the unamortized cost of issuing the prior bonds, or obligations, or certificates calling for bonds, should be prorated over the life of the new bonds because the unamortized expenses of the prior bonds, or obligations, are attributable to the issuance of the new bonds.

■ 5. Where an issue of corporate bonds is retired for cash, the unamortized balance of discount, or commissions, paid on sale of the bonds is deductable in the year of retirement in order to arrive at taxable income for Federal income and excess profits taxes.

■ 6. The plaintiff is entitled to refunds on account of Federal tax deficiencies erroneously assessed against plaintiff and for overpayment of Federal taxes, for all of which refund claims were filed and denied, in the following amounts for the following taxes and years, to wit:

(a) $2,158.53 on account of 1945 excess profits and income taxes, with interest at 6 per cent, per annum, from March 16, 1949, the date of payment, to date of refund.

(b) $1,171.46 on account of 1946 income taxes, with interest at 6 per cent, per annum, from January 9, 1950, the date of payment, to date of refund.

(c) $1,287.37 on account of 1947 income taxes, with interest at 6 per cent, per annum, from July 15, 1950, the date of payment, to date of refund.

(d) $1,219.45 with interest to date of refund from July 15, 1950, the date of payment, and $8,389.92, with interest to date of refund from March 15, 1949, all on account of 1948 income taxes.

(e) $263.24 on account of 1946 income taxes, due to carry back on account of loss resulting from charging off in 1948, the unamortized balance of expense on

1. Now 28 U.S.C.A. § 1346(a).

selling said preferred certificates, together with interest from March 15, 1949, the date of payment, to date of refund.

Judgment accordingly.